BLUE RIBBON CREAMERY *v.* MONK *et al.*

(Division A. April 3, 1933. Suggestion of Error Overruled May 1, 1933.)

[147 So. 329, 782. No. 30325.]

**R. H. & J. H. Thompson,** of Jackson, for appellant.

Enochs & Enochs, of Jackson, for appellees.

Argued orally by **J. H. Thompson**, for appellant, and by **D. C. Enochs**, for appellees.

**Cook, J.**, delivered the opinion of the court.

J. T. Monk and six others, dairymen, filed a bill in the chancery court of the First district of Hinds county against the Blue Ribbon Creamery seeking the specific performance by the creamery of separate contracts with each of said dairymen for the purchase by the creamery of all milk produced by them, and for alleged unpaid balances due them for milk theretofore delivered to the creamery. Upon the trial of the cause, there was a decree construing the contracts, and ordering specific performance by injunction against the breach thereof, but denying the dairymen recovery for any alleged past-due balances on the ground that there had been accord and satisfaction by the acceptance of the amounts tendered in bimonthly settlements for milk delivered. The decree retained full jurisdiction of the cause for further directions, supervision, and enforcement of the contracts in accordance with the construction thereof by the court. From this decree, the creamery appealed, while the dairymen prosecuted a cross-appeal from that part of the decree denying them a recovery for unpaid balances.

On and prior to May 27, 1930, the appellees were each separately engaged in the business of dairying, and were selling the milk produced by them at retail in the city of Jackson, Mississippi, having established trade routes, regular customers, and good will, in said city, for the sale and distribution of milk. On that date the appellees each separately entered into exactly similar contracts with the Jackson Dairy Products Company, by the terms of which the said dairymen sold to it the said trade routes, good will, etc., and obligated and bound them-

selves not to engage in the distribution and retail sale of milk or other dairy products in the city of Jackson for a period of five years from the date of said contracts, and the said company obligated itself to buy from the said dairymen during the said five-year period the milk produced by them upon a basis of price fixed and set out in a schedule attached to and made a part of the contracts.

On September 19, 1931, the ownership of the business, plant, and equipment of the Jackson Dairy Products Company passed, by conveyances, to the appellant, and, as a part of the consideration of said sale to it, the appellant assumed, in writing, the performance of said contracts with the appellees, and they continued to deliver milk to the appellant creamery.

The schedule of milk prices attached to each of said contracts provides that: "When the general market price at retail for milk in the city of Jackson is fifteen cents per quart the price to dairymen shall be three dollars and thirty-five cents per hundred pounds of whole milk. The foregoing prices shall be subject to change in keeping with fluctuations in the retail price of milk in the city of Jackson, Mississippi."

At the time of the execution of these contracts, the retail price of milk in the city of Jackson was fifteen cents per quart, and payments were made on this basis until March, 1931, when the said retail price dropped to thirteen cents per quart. Thereupon, over the objections and written protest of appellees, the Jackson Dairy Products Company reduced the price to them to two dollars and sixty-five cents per hundred pounds. They continued, however, to deliver milk at this lowered price until March, 1932, when the retail price of milk dropped to ten cents per quart. Thereupon the appellant notified the appellees that the price paid to them would be reduced, and offered to them several optional propositions, all of which were refused. The appellant then fixed one dollar forty-seven and one-half cents per hundred pounds

as the price it was required to pay under its construction of the contract, but the dairymen declined to agree to this price. Further negotiations failed to produce an agreement, and the appellant notified the appellees that it would pay no more than one dollar forty-seven and one-half cents per hundred so long as the retail price remained at ten cents per quart, and the conferences between it and the appellees ended. Thereafter the appellees continued to deliver their milk to the appellant, and, on account of necessitous circumstances, as shown by the evidence, accepted bimonthly settlements tendered at that basic price until the filing of this suit.

The appellant contends, first, that, under a proper construction of the contract, one dollar forty-seven and one-half cents per hundred pounds of whole milk was all that was due the appellees so long as the retail price remained at ten cents per quart; and, second, that, if mistaken in that view, there was an accord and satisfaction of all balances which accrued before the filing of this suit.

The court below construed the contracts to authorize changes in the price of whole milk to be paid to the appellees in the exact proportion that the retail price of milk on any given date bears to the basic retail price of fifteen cents per quart named in the contracts. This construction of the contract is worked out by detailed figures in the decree of the court below, and the price to be paid when the retail price is ten cents per quart is determined to be two dollars twenty-three and one-third cent per hundred pounds of whole milk. We think the provision of the contract that "the foregoing prices shall be subject to changes in keeping with fluctuations in the retail price of milk in the City of Jackson" was properly construed by the chancellor.

We are of the opinion, however, that, by the acceptance of settlements tendered the appellees at one dollar forty-seven and one-half cents per hundred pounds, there was accord and satisfaction as to all sums due for the period covered by these settlements. The appellees were notified

that the appellant would insist that under the contract it owed them only one dollar forty-seven and one-half cents per hundred pounds, and would refuse to pay more. At each bimonthly settlement, each of the appellees was furnished a statement of the amount of milk delivered by him since the last settlement, and the amount due therefor at one dollar forty-seven and one-half cents per hundred pounds, with a check attached for said sum. Up to May 1, 1932, the appellees J. T. Monk and C. M. Beggerly accepted these bimonthly settlements, while the other appellees accepted the settlements up to June 1, 1932. We think this constituted accord and satisfaction of all sums due prior to these dates respectively, and that on cross-appeal the decree should be affirmed.

Having reached the conclusion that there was nothing due the appellees, the court should have denied specific performance and dismissed the bill of complaint, since to decree specific performance would require the constant superintendence of the court for a period of years in order to enforce the carrying out of its decree. Sims v. Vanmeter Lumber Co., 96 Miss. 449, 51 So. 459. That to decree specific performance in this case runs counter to the doctrine announced in the Sims Case, supra, appears manifest from the provision of the decree that "the court subject to an appeal herefrom to the Supreme Court, hereby retains full jurisdiction of this case, for the purpose of decreeing further directions, if necessary, fluctuations in said retail price, sums due complainants, respectively, by the defendant for said milk, compliance therewith, and for any and all other purposes, to the end that the said contracts, respectively, shall be performed by the defendant in accordance with the construction thereof by this court as aforesaid."

On cross-appeal, the decree of the court below will therefore be affirmed, while on direct appeal the decree will be reversed and the bill of complaint dismissed.

Affirmed on cross-appeal, and reversed and bill dismissed on direct appeal.

ON SUGGESTION OF ERROR.

**Cook, J.,** delivered the opinion on suggestion of error.

The appellant's suggestion for modification of the opinion heretofore rendered in this cause is overruled. The appellees have suggested that we erred in dismissing the cause, and that it should have been remanded for further proceedings on the supersedeas bond, by which the appellant obligated itself to pay appellees for milk delivered during the pendency of the appeal "at the prices fixed and determined to be the prices which complainants are entitled to be paid." We are of the opinion that the dismissal of the bill of complaint was proper, and that appellees must be remitted to an action at law on the bond, if any such they have, as to which we express no opinion. This suggestion of error will likewise be overruled.

Overruled.